UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARSHAUN FELIX WILLIAMS,<br><br>    Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 17-cv-07164-JD<br><br>**ORDER RE SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 33, 38 |

Plaintiff Marshaun Williams challenges a decision by a Social Security Administration ("SSA") administrative law judge ("ALJ") that denied Williams' claim for supplemental security income ("SSI") under Title XVI of the Social Security Act. The parties have filed cross-motions for summary judgment. Dkt. Nos. 33, 38. The case is remanded to the SSA for further proceedings consistent with this order.

**BACKGROUND**

Williams is a 35-year-old male, born in 1984. He was previously granted SSI benefits for bipolar disorder in 2003, when he was 19 years old. Dkt. No. 11 (Administrative Record or "AR") 22, 26; Dkt. No. 33 at ECF p. 8. Williams was later incarcerated for five years from 2005 to 2010, during which time his SSI benefits were terminated. AR 23; Dkt. No. 33 at ECF p. 8; Dkt. No. 38 at 3. Williams also states that, "[a]t all relevant times, plaintiffs [*sic*] father Kevin Williams now at age 65 is a recipient of Social Security disability and retirement benefits." Dkt. No. 42 at 6.

On March 18, 2014, Williams "applied for Supplemental Security Income and any federally administered State supplementation under title XVI of the Social Security Act, for benefits under the other programs administered by the Social Security Administration, and where applicable, for medical assistance under title XIX of the Social Security Act." AR 173. On

September 4, 2014, the SSA issued to him a "Notice of Disapproved Claims." AR 118. On the first page of the letter, under the heading, "The Decision on your Case," the notice stated: "We have determined that your condition was not disabling before age 22. In deciding this, we studied your records, including the medical evidence, and considered your education and training in determining how your condition affects your ability to work." *Id*. On the second page of the letter, the SSA set out the "Rules for Social Security Disability," explaining that "[y]ou must meet certain rules to qualify for disabled child's Social Security benefits." AR 119. The third page included the rules to "qualify for SSI payments based on disability." AR 120.

On October 16, 2014, Williams requested reconsideration of the SSA's decision, stating that he disagreed "with the determination made on my claim for Supplemental Security Income benefits." AR 123. On December 2, 2014, the SSA issued a "Notice of Reconsideration," which stated, "[y]ou asked us to take another look at your claim for Supplemental Security Income (SSI) payments," and the SSA's conclusion that it had "found that the first decision was correct." AR 126. This time, "The Decision on Your Case" portion of the letter stated, "We have determined that your condition is not severe enough to keep you from working." *Id*. This notice letter set out rules only for "SSI payments based on disability," and this time omitted any mention of disabled child's social security benefits. *Id*. 127.

On January 12, 2015, Williams requested a hearing before an ALJ. The request stated, "I disagree with the determination made on his claim for Supplemental Security Income benefits because the SSA's notice of disapproved claim issued on 9/4/14 is in direct conflict with its subsequent December 2, 2014 notice of reconsideration denying the claim. Disapproval of the claim had strictly been based on Mr. Williams' condition not being disabling before age 22. He proved that his disability began at age 16." AR 131.

Williams was issued a notice of hearing on July 22, 2016, setting a hearing for October 14, 2016. AR 155. Under "Issues I Will Consider," the ALJ stated, "[t]he hearing concerns your application of March 18, 2014, for Supplemental Security Income (SSI) under section 1614(a)(3) of the Social Security Act (the Act). I will consider whether you are disabled under section 1614(a)(3) of the Act." AR 157. The Administrative Record also contains a letter from the ALJ

to vocational expert, Robert A. Raschke, that requests Raschke's appearance and testimony at Williams' hearing and states, "Your testimony will primarily cover the following period: May 1, 2003 through present." AR 165.

The hearing went forward as scheduled on October 14, 2016. AR 33. Williams appeared with his father, Kevin Williams, who acted as his representative. *Id*. 35. Kevin Williams expressed surprise that the ALJ did not have his son's historical medical records from Kaiser Permanente or the prison where he had been incarcerated. *Id*. 54-55. In response to the ALJ's statement that "what I have to consider is his disability status as of February 28, 2014," Kevin Williams responded, "Your Honor, the basis he was denied was because he could not show proof of a disability before 22, which then I showed proof that he had a medical disability, psychological disability . . . [b]efore the age 22." *Id*. 56. The ALJ simply responded, "Okay." *Id*. This point came up repeatedly. When the ALJ asked, "So are there any treatment notes or treatment reports from 2014 to 2016?" Kevin Williams responded, "No . . . because the basis for the denial was he didn't show any before. He didn't show any proof before. That was the basis for the reconsideration." AR 56-57; *see also id*. 59 ("[T]he basis for the denial, is because he couldn't show that he had any psychological problems before the age of 22. . . . That is why the focus has been not after 2014, but before."); *id*. 67 ("I think it would be a miscarriage of justice for him to be denied the continuation of benefits after he was already previously evaluated and determined that he should receive the benefits. And then the decision that denied him was predicated on him not showing or having them losing medical records or not having medical records that were previously submitted before the age of 22.").

The ALJ issued a decision on March 2, 2017, concluding that "the claimant has not been under a disability within the meaning of the Social Security Act since February 28, 2014 [*sic*], the date the application was filed." AR 17. The date of Williams' application was March 18, 2014. AR 157, 173. The ALJ's decision also stated that "the claimant's representative [had] stated the record was complete at the time of the hearing," AR 17, which is a conclusion that does not square with the October 14, 2016, hearing transcript. AR 33-70.

3

**DISCUSSION**

This is a somewhat atypical appeal of an SSA decision. The record shows that the claimant was unclear, and possibly confused, about which of his claims were at issue, as well as the time period that was relevant for the determination of his claims.

Williams appears to believe he applied not just for SSI benefits, but also for child's social security benefits under 42 U.S.C. § 402(d), as the disabled child of an individual receiving old-age and disability benefits. *See*, *e.g.*, Dkt. No. 42 at 6 (stating, under "Relief Requested," "Disabled Adult Child Benefits are available to the children of persons who are deceased or who are drawing Social Security disability or retirement benefits. The child must have become disabled before age 22. See generally 42 U.S.C. § 402.").

The language used is not crystal clear, but Williams' application filed on March 18, 2014, does state that he applied for both SSI benefits as well as "benefits under the other programs administered by the Social Security Administration." AR 173. And the September 4, 2014, Notice of Disapproved Claims made express reference to "disabled child's Social Security benefits," AR 119, as well as stating that Williams' application as a whole was denied because the SSA had determined his condition "was not disabling before age 22." AR 118. Disability before age 22 can be important for child's social security benefits eligibility. *See* 42 U.S.C. § 402(d)(1)(B) (one criteria for child's benefits is that "at the time [child's insurance benefits] application was filed [child] was unmarried and . . . is under a disability . . . which began before he attained the age of 22").

On this issue, a remand would not necessarily be warranted. This is because Williams himself took actions that seemingly abandoned his claim for child's benefits and focused on his claim for SSI benefits only. Most significantly, his October 16, 2014, request for reconsideration stated his disagreement "with the determination made on my claim *for Supplemental Security Income benefits*." AR 123 (emphasis added). The SSA thereafter addressed his claim for SSI benefits only. *See*, *e.g.*, AR 126 (Notice of Reconsideration); AR 157 (Notice of Hearing).

The time period issue, however, is different, and it establishes on its own the need for a remand. Williams' application was initially denied on the basis that the SSA had "determined that

4

your condition was not disabling before age 22." AR 119. The SSA gave that single reason for denying all benefits sought by his application, which expressly included benefits under the Supplemental Security Income program. Consequently, even if it could be said that Williams thereafter narrowed the scope of reconsideration and further proceedings to his SSI benefits only, he rightfully proceeded with the understanding that his SSI benefits too were denied because he had failed to show his condition was disabling before age 22. No subsequent communication from the SSA clearly communicated that there was a different time period at issue for his claim for SSI benefits.

Indeed, the reconsideration decision affirmed that the SSA had "found that the first decision was correct," *i.e.*, that it had correctly determined that his condition was not disabling before age 22. AR 126. Notably, Williams' request for an ALJ hearing expressly flagged this issue. *See* AR 131 (arguing that 9/4/14 notice of disapproved claim was "in direct conflict" with 12/2/14 notice of reconsideration because "[d]isapproval of the claim had strictly been based on Mr. Williams' condition not being disabling before age 22"). Yet the ALJ's hearing notice did not address this issue or clearly state that a different time period (2014 to 2016) would be at issue at the hearing, and instead notified Williams only that the hearing would "concern[] your application of March 18, 2014, for Supplemental Security Income (SSI) under section 1614(a)(3) of the Social Security Act (the Act)." AR 157. At the hearing too, the ALJ did not address this issue and explain why, after an initial decision from the SSA that had talked only about Williams' condition before age 22, the ALJ was now only concerned with the time period between the application's filing in 2014 and the hearing in 2016. Rather, to Kevin Williams's repeated objections based on this point, the ALJ responded only, "Okay." AR 56.

There is a real concern that Williams did not receive notice of hearing and an opportunity to be heard consistent with constitutional due process requirements. *See Harris v. Callahan*, 11 F. Supp. 2d 880, 884 (E.D. Tex. 1998). Due process requires the "opportunity to be heard at a meaningful time and in a meaningful manner," *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), and in a context like this one, those principles "require that a recipient have timely and adequate notice detailing" what will be covered at the hearing as well as an effective opportunity to address

5

the relevant issues. *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970). On the record in this case, the Court cannot say that those requirements were met.

The ALJ also did not fulfill the "independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). This duty "extends to the represented as well as to the unrepresented claimant," but "the ALJ must be especially diligent in exploring for all the relevant facts" when the claimant is unrepresented. *Id*. Here, as in *Tonapetyan*, Williams was "represented, but by a lay person rather than an attorney." *Id*. "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Id*. (quoting *Smolen*, 80 F.3d at 1288). Here, as discussed above, the record clearly shows that Williams and his father walked into the ALJ hearing expecting – for legitimate reasons rooted in the SSA's own documents that are in the administrative record – that a completely different time period would be at issue than the one the ALJ had in mind.

The ALJ's statement at the hearing that he would "hold the record open two weeks" did not discharge this duty. AR 55; AR 17 (March 2, 2017 decision stating ALJ had "left the record open to allow the claimant additional time to obtain evidence in support of his claims"). Two weeks is not a sufficiently long period of time in this circumstance, where the time period at issue shifted, without adequate notice to the claimant, by more than a decade. Moreover, the record and the briefing before the Court cast some doubt on whether the record was meaningfully left open even for those two weeks.[1]

---

[1] The ALJ's unsupported statement that "the claimant's representative stated the record was complete at the time of the hearing" invites some doubt. AR 17. Williams has also submitted records here that cast further doubt on the ALJ's statement that "no additional evidence" was received by March 2017. *Id*.; *see* Dkt. No. 33-3 (Request for Judicial Notice), Exs. I, J, K (showing three attempts to submit additional medical evidence). The ALJ did subsequently send Williams a letter dated April 17, 2017, stating that he was "in receipt of information you submitted from Kaiser Permanente South San Francisco and California Correctional Health Care Services," but that this "does not warrant a change in the conclusion" he had previously reached. AR 13. This is not surprising given that the Kaiser and prison records still focused on plaintiff's pre-age 22 time period, and ultimately underscores the inadequacy of the discussion at the hearing and the length of time for which the record was left open.

6

The ALJ has a "duty to conduct a full and fair hearing," and the record here is "inadequate." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). The circumstances of this case show a substantial likelihood of prejudice, and consequently "remand is appropriate so that the agency 'can decide whether re-consideration is necessary.'" *Id*. at 888 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 414 (2009)).

## CONCLUSION

The case is remanded to the SSA for further proceedings consistent with this order. The Court declines to take up at this time the parties' other arguments about the ALJ's decision. Dkt. Nos. 33, 38.

**IT IS SO ORDERED.**

Dated: October 11, 2019

JAMES DONATO
United States District Judge